Edward M. KORRY, Plaintiff,

v.

INTERNATIONAL TELEPHONE &
TELEGRAPH CORPORATION and
Harold S. Geneen, Defendants.

No. 77 Civ. 3441.

United States District Court,
S. D. New York.

Feb. 9, 1978.

Speiser & Krause, P. C., New York City, for plaintiff.

Davis, Polk & Wardwell, New York City, for defendant Internl. Tel. & Tel. Corp.

Gilbert, Segall & Young, New York City, for defendant Geneen.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Edward M. Korry, former United States Ambassador to Chile, charges in this diversity action that defendant International Telephone & Telegraph ("ITT") through its employees, and defendant Harold Geneen, its president, along with others not charged, conspired to and did injure him through various false statements.[1] Defendants have moved to dismiss, raising statute of limitations objections and attacking the sufficiency of each of plaintiff's claims.[2] We dismiss the complaint but grant plaintiff leave to replead some claims.

The complaint purports to state a cause of action on five different theories. The first claim, which plaintiff characterizes as based on a theory of prima facie tort, contains allegations relied upon in each of the other claims. Taking those allegations as true, it emerges that in 1973 ITT employees made false statements before three United States Senate Committees and Subcommittees and to persons associated with those committees, to the effect that (a) ITT had *not* been involved in efforts to subvert Chilean elections or undermine the government of Salvatore Allende, but (b) that Ambassador Korry knew of, and had responsibility for, ITT involvement in such efforts. These statements were part of a larger course of conduct calculated to injure Kor-

---

**1.** The uncharged co-conspirators are alleged to include Richard Nixon, John Mitchell, John Erlichman, and Richard Helms.

**2.** Because of our disposition of the motion, we need not consider other arguments raised by defendants.

ry, upon which ITT embarked in order to protect its reputation, protect an ITT claim filed with the Overseas Private Investment Corporation ("OPIC"), shelter itself from possible civil and criminal liability, and to satisfy a vindictive desire to harm Korry. The result was the destruction of Korry's ability to pursue a career in either international relations or journalism. The first claim contains general allegations that the conspiratorial "course of conduct" continues into the present and was not confined to the making of statements. Nowhere, however, does it mention any act other than the making of statements, or describe any statement made after April of 1973.

The other four claims rely on the core of facts set forth in the first. The second claim, styled as an action for damages for interference with economic relations, contains the added allegation that the defendants' acts were calculated to, and did, interfere with an employment contract Korry entered into in June, 1973, with the United Nations Association. The third claim is for damages for intentional infliction of emotional distress. The fourth, a slander claim, additionally alleges that in December, 1976, one Robert Berellez, an ITT employee, told Justice Department employees that Korry had been privy to ITT plans to interfere with Chilean politics; that at an ITT shareholders' meeting in May, 1977, one Howard Aibel, another ITT employee, falsely charged Korry with fabricating reports about ITT operations in Chile; that defendant Geneen, at the same shareholders' meeting, called Korry a communist and described him as "a bitter, disillusioned man, who has forsaken his country." In his fifth and final claim, plaintiff invokes all the facts previously asserted in support of a demand for injunctive relief.

■ Defendants move to dismiss the first claim, based on prima facie tort, for failure to state a cause of action. We grant that motion. Plaintiff alleges that defendants' actions were motivated by four distinct desires: (a) to injure him; (b) to protect ITT's reputation; (c) to shield the corporation from possible liability; and (d) to protect

ITT's OPIC claim. Since it is well settled that a claim of prima facie tort does not lie where the defendants' action has any motive other than a desire to injure a plaintiff, *Benton v. Kennedy-Van Suan Mfg. & Eng. Corp.* (1st Dept.1956) 2 A.D.2d 27, 28–29, 152 N.Y.S.2d 955, 957–58; *Glenn v. Advertising Publications* (S.D.N.Y.1966) 251 F.Supp. 889, 906, the first claim must be dismissed for failure to state a claim on which relief can be granted.

■ Defendants contend that plaintiff's second and third claims are time-barred. We agree. In applying statutes of limitations, we look to the essence of plaintiff's claim, not the label he chooses to tag onto it. *Morrison v. National Broadcasting Co.* (1967) 19 N.Y.2d 453, 459, 280 N.Y.S. 641, 644. Any other rule would allow a plaintiff to evade the strictures of limitations statutes simply by clever characterization of claims. Since, in the instant case, all claims are for redress of injury to reputation, we find that New York's one-year Statute of Limitations, C.P.L.R. § 215(3), for libel and slander actions, should apply. *Morrison, supra; Noel v. Interboro Mutual Indemnity Insurance Co.* (1st Dept.1968) 31 A.D.2d 54, 295 N.Y.S.2d 399, 400. Application of the one-year statute would leave actionable only those injuries attributable to statements made on or after July 18, 1976.

■ To avoid this result, plaintiff urges that the claimed wrongs are part of a "continuing conspiracy." He contends that the Statute of Limitations should not begin to run as to any act until the course of conduct had ended—in this case May, 1977. We cannot accept this reasoning. Periods of limitations must, by statute, "be computed from the time the cause of action accrued." C.P.L.R. § 203(a). In a civil conspiracy action, the conspiracy itself is not actionable, but recovery may be had for the injury caused by specific acts. A person harmed may sue at the time each such act occurs, without having to wait until the termination of the conspiracy. The Statute of Limitations therefore commences to run with respect to each act when it occurs.

*Rutkin v. Reinfeld* (2d Cir. 1956) 229 F.2d 248, 251, *cert. denied* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60. Nor does defendants' alleged repetition of any particular wrong require a different result. Repeated wrongs "are treated as separate rights of action and the Statute of Limitations begins to run as to each . . . upon its commission." *Baxter v. State* (Ct. of Claims 1947) 189 Misc. 525, 72 N.Y.S.2d 337, 340, *aff'd* (4th Dept.1948) 273 App.Div. 839, 77 N.Y.S.2d 796. Also see *Sachs v. Cluett Peabody & Co.* (1st Dept.1943) 265 App.Div. 497, 39 N.Y.S.2d 853, 857, *aff'd* (1944) 291 N.Y. 772, 53 N.E.2d 241; *Cross v. State* (Ct. of Claims 1972) 72 Misc.2d 247, 338 N.Y.S.2d 469, 472.[3]

Our holding that statements made prior to July 18, 1976 are not actionable leaves the second and third claims without substance. Remaining are only conclusory allegations that injury-causing acts took place on or after that date. Accordingly, those causes of action are dismissed. We do, however, grant plaintiff leave to replead them within 30 days if he can allege, with the requisite specificity, actionable wrongs attributable to defendants, committed on or after July 18, 1976.

■ Defendants also move to dismiss the fourth claim, for slander, for failure to state a cause of action. Specifically, they contend that (a) plaintiff has not pleaded the objectionable language with the requisite specificity, and (b) that he has pleaded neither special damage nor language that is slanderous per se. We reject the former contention but accept the latter. To be sure, as defendants assert, plaintiff has not pleaded the purportedly defamatory statements in haec verba, but since New York's strict pleading rule for slander does not apply in this court, he is under no requirement to do so. F.R.C.P. 8(a), *Pierre v. Printing Developments, Inc.* (S.D.N.Y.1977) 432 F.Supp. 840, 843. Plaintiff has given notice with sufficient particularity of the statements to which he objects.

■ To state a claim for slander, however, plaintiff must plead either special damages or language that is slanderous per se. *Gurtler v. Union Parts Mfg. Co.* (1956) 1 N.Y.2d 5, 150 N.Y.S.2d 4. On the theory that defendant Geneen's description of him as a "communist" impugned his fitness for his two professions, journalism and international diplomacy, plaintiff contends that that description was slanderous per se. We disagree. Geneen's statement was allegedly made some six years after plaintiff left his last post in the foreign service and some two years after he stepped down as President of the United Nations Association. Because plaintiff was not pursuing a career in international relations at the time Geneen is said to have called him a communist, Geneen's statement cannot have impugned him in that career. See *Gurtler v. Union Parts Mfg. Co.* (1st Dept.1955) 285 App.Div. 643, 140 N.Y.S.2d 254, 258–59, *aff'd* (1956) 1 N.Y.2d 5, 150 N.Y.S.2d 4; *Shakun v. Sadinoff* (1st Dept.1947) 272 App.Div. 721, 74 N.Y.S.2d 556, 557. Nor do we believe, under *Gurtler,* that being called a communist is slanderous per se with regard to plaintiff's profession as a journalist. That case—decided at a time when the word "communist" was much more laden with emotion than it is today—held not slanderous per se the epithet communist as applied to a professional engineer who customarily looked to government defense contractors for employment. In light of that holding we cannot very well—in today's more relaxed atmosphere—find the appellation slanderous per se as applied to a free-lance journalist. See also Restatement 2d, Torts (1976) § 573.

**3.** Plaintiff contends that until June 1975, defendants "fraudulently concealed" material facts so as to prevent him from being able to bring this action. He urges that this "concealment" should toll the Statute of Limitations. See *Fitzgerald v. Seamans* (D.D.C.1974) 384 F.Supp. 688, 693–94, *aff'd as modified* (D.C.C. 1977) 553 F.2d 220, see generally Developments in the Law—Statutes of Limitations, 63 Harv.L.Rev. 1177, 1220 (1953). Since the alleged concealment ended more than two years prior to the commencement of this action, and since New York's one-year Statute of Limitations is applicable, such a toll, if one were appropriate, would not aid plaintiff.

Plaintiff also attempts to portray as slanderous per se the statements of Berellez, to Justice Department officials, and Aibel, at the shareholders' meeting, concerning his knowledge of ITT operations in Chile. Plaintiff contends that these statements were meant, and in fact understood, to charge him with the crime of perjury.[4] See Restatement 2d, Torts (1976) § 571. Since those statements are not defamatory on that theory without reference to the extrinsic fact of the contents of plaintiff's prior testimony, they are not actionable per se.[5] See *O'Connell v. Press Publishing Co.* (1915) 214 N.Y. 352, 108 N.E. 556; *Remington v. Bentley* (S.D.N.Y.1949) 88 F.Supp. 166, 170.

Because the statements are not slanderous per se, plaintiff must plead special damage to state a valid slander claim. *Gurtler, supra.* We find that he has failed to do so. He alleges that the defamations destroyed his livelihood, injured his reputation, and caused him emotional distress, to an undifferentiated total of $2 million in damages. Of these injuries, only the lost earnings could constitute special damages.[6] Restatement 2d, Torts (1976) § 575. Such a generalized allegation does not suffice as a pleading of special damage. F.R.C.P. 9(g), *El Meson Espanol v. N.Y.M. Corp.* (2d Cir. 1975) 521 F.2d 737, 740 n.2, *Cont. Air Tkt. Agency v. Empire Intern. Travel* (4th Dept. 1976) 51 A.D.2d 104, 380 N.Y.S.2d 369, 372. Accordingly, we dismiss plaintiff's slander claim. We grant him leave, however, to replead to allege any special damage caused by the alleged slanders.

Finally, defendants move for dismissal of the fifth claim, for injunctive relief. Sensitivity to the constitutional implications of prior restraints on speech, *Near v. Minnesota* (1931) 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357, compels us to grant this motion.

In summary: We dismiss the first claim for failure to state a claim on which relief can be granted; the second and third claims for failure to plead any acts within the statutory period of limitations; the fourth for failure to plead special damages; and the fifth because of constitutional considerations. We grant leave to amend the complaint within 30 days to allege acts occurring on or after July 18, 1976 in support of the second and third claims, and to allege special damage in regards to the fourth claim. The first and fifth claims are dismissed without leave to replead.

SO ORDERED.

---

4. While plaintiff depicts these statements as slanderous per se in the complaint, he did not do so in either his responsive papers to this motion or upon oral argument.

5. Plaintiff has not suggested that the Justice Department officials or the audience at the shareholders' meeting were familiar with his prior testimony. We therefore need not consider whether such knowledge—not held by the general public—would suffice to render the Ai-
bel and/or Berellez statements defamatory on their face and actionable per se.

Defendants have not claimed that the December, 1976 statements to Justice Department officials were privileged, and we do not pass upon that issue.

6. Recovery can, of course, be had for emotional distress caused by an otherwise actionable defamation. Restatement 2d, Torts, (1976) § 623.