Rony **MANN**, Plaintiff,

v.

**Roy G. LEVY, Bernard Beyda, Larry Silverstein, Steven Cohn and Republic Factors Corporation, Defendants.**

**No. 91 Civ. 2792 (WK).**

United States District Court, S.D. New York.

Nov. 1, 1991.

---

*press, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

Michael S. Etkin, Gold & Wachtel, New York City, for plaintiff Rony Mann.

Roy G. Levy and Donna F. Yanofsky, Shulman & Levy, Ossining, N.Y., for defendant Roy G. Levy.

Donald Stuart Bab, Bresler and Bab, New York City, for defendant Lary Silverstein.

Andrew S. O'Connor, Liddle O'Connor, Finkelstein & Robinson, New York City, for defendant Republic Factors Corp.

## OPINION AND ORDER

WHITMAN KNAPP, District Judge.

Invoking diversity jurisdiction, plaintiff brings this action to recover damages resulting from defendants allegedly fraudulently inducing it to invest in Genesis Marketing Corporation ("Genesis"), a clothing manufacturing company which became worthless one month after plaintiff purchased 49% of its common stock. Defendants Roy Levy, Larry Silverstein and Republic Factors Corporation ("Republic") move to dismiss the action on various grounds. Pursuant to Fed.R.Civ.P. 12(b) and Rule 9(b), all three move to dismiss the complaint for failure to state a claim upon which relief can be granted, for failure to allege fraud with particularity, and as barred by the statute of limitations. Levy and Silverstein also move pursuant to Rule 19 to dismiss for failure to join an indispensable party, namely David Cohn. Pursuant to Local Rule 39 Republic and Levy also move for an order requiring plaintiff to file a bond for costs prior to proceeding with this action. For the reasons that follow these motions are granted in part and denied in part.

We address each of defendants' motions in turn. However, we note at the outset that although the complaint alleges several securities law violations, see First Count, Second Count, plaintiff now concedes that such claims are barred by the applicable statute of limitations. Accordingly only plaintiff's state law fraud claims are presently before us, specifically: common law fraud, aiding and abetting common law fraud, and fraudulent concealment. See Third Count; Fourth Count; Fifth Count.[1]

### *Defendants' Motions to Dismiss*
### BACKGROUND

Accepting, as we must, all allegations as true, the facts are as follows.

In November 1987 defendant Bernard Beyda introduced plaintiff to David Cohn, and to defendants Steven Cohn and Roy Levy[2], officers and directors of Genesis, for the purpose of discussing the possibility of plaintiff's investing in Genesis[3]. During this initial meeting, defendants "made numerous unqualified representations and statements concerning the growth and future profit potential of Genesis." In particular, the complaint states that "David Cohn and the other individual defendants":

a) "depicted Genesis as a company with 'great potential' which had solved all of its financial difficulties and had 'turned the corner' toward financial success";

b) represented that "the financial difficulty Genesis had experienced in the past was due to an overstock of poor quality winter merchandise", and that Genesis "had solved this problem by discontinuing purchases from these particular manufacturers";

c) represented that much of Genesis' financial problems were also the result of the large operating expenses it had incurred from owning an overseas manufacturing plant which it intended to sell; and,

e) represented that Genesis was going to substantially alter its marketing strategy in the future.

Plaintiff at this time declined to invest in Genesis.

---

**1.** Counts Three and Five are asserted against all defendants, Count Four is asserted against Republic only.

**2.** Levy is an attorney, and represented Genesis and its president, David Cohn in connection with the Stock Purchase Agreement at issue in this action.

**3.** To date neither Bernard Beyda nor Steven Cohn has entered an appearance in this action.

Sometime prior to this meeting Republic, Genesis' sole factor since 1984, had notified it of an intention to cancel as of January 23, 1988 its factoring agreement due to its poor financial condition. Plaintiff had no knowledge of this fact. On the contrary, several days after the November meeting, "at the specific request of the Genesis defendants" Republic phoned plaintiff's attorney in order to convince plaintiff that Genesis was still a good investment. During this call, Republic made numerous representations to the effect that:

a) "[it] had great 'confidence' in Genesis and viewed it as a company with tremendous potential for the future",

b) "David Cohn was a 'capable administrator'", and

c) Republic was going to carefully monitor all aspects of Genesis' finances.

Approximately one month later, plaintiff was informed by David Cohn that defendants were in a position to offer a better deal, because he had arranged for Genesis to buy back shares from certain other shareholders which would enable him to offer plaintiff 49% of the stock in the company in return for his investment therein. In January 1988, plaintiff again met with David and Steven Cohn and Levy to discuss this matter, and at this time defendants "reaffirmed and reiterated their earlier representations regarding what a 'terrific company' Genesis was". More specifically, Levy and David Cohn stated that:

since their last meeting, they had been in contact with additional investors who were prepared to infuse capital in Genesis, and that they had initiated negotiations with Republic to provide Genesis with the necessary cash flow for its daily operating costs.

At or about this time plaintiff was advised by his attorney that he should make this investment in the form of loans rather than capital. Thereafter plaintiff's attorney met with a representative of Mast Inc. ("Mast"), a company to which Genesis had in 1984 issued two promissory notes totalling more than $3.4 million, to negotiate an agreement to subordinate these notes to any note Genesis might issue to plaintiff. At this meeting plaintiff was informed that the Mast notes were in default and was offered the option of purchasing them at a discount, namely for $550,000. Later that day, Beyda, David Cohn and Levy phoned "and persuaded plaintiff to purchase [the Notes] by reducing the level of cash required to purchase the 49% stock interest in Genesis".

In February plaintiff met with David Cohn, Republic, and Levy. Republic then represented to plaintiff that it "would resume [its] factoring agreement with Genesis so long as plaintiff provided [it] with additional security or collateral".

Sometime prior to February 3 plaintiff was provided with the financial statements of Genesis, which had been prepared by defendant Larry Silverstein, Genesis' chief financial officer. On February 3 plaintiff entered into an "Agreement of Purchase and Sale" ("Agreement") with David Cohn and Genesis, whereby plaintiff agreed to purchase 485 shares (approximately 49%) of the common stock of Genesis in exchange for $500,000 in cash and loans to Genesis. Annexed to the Agreement were the financial statements of Genesis, prepared by Silverstein, which covered the period up to and including August 31, 1987. The Agreement contained the express representations that:

a) the financials "were prepared in accordance with generally accepted accounting principles and fairly reflected the current financial position of Genesis";

b) "as of the date of the closing ... there had been no materially adverse change in the financial condition of Genesis as disclosed in the financial statements"; and

c) "as of the date of the closing there had not been, nor would there be, any event or condition of any character which would have a material and adverse affect

on the financial condition, business assets or prospects of Genesis".

The Agreement was contingent upon plaintiff establishing an irrevocable Standby Letter of Credit in the principal amount of $750,000 with a bank for the benefit of Republic and his purchasing a promissory note in the principal amount of $2,084,389.22 from Mast at the discounted price of $550,000. On March 21 plaintiff established the letter of credit, and on March 23 he purchased the promissory note. On March 24 Republic drew down $375,000 on the letter of credit, and notified Genesis that it would resume its factoring agreement.

In May Levy phoned plaintiff's attorney and informed him that Republic had notified Genesis that it was again terminating its factoring agreement because Genesis had "unexpectedly" in a single week received $2 million worth of returned merchandise. Republic then drew down the remaining $375,000 of the letter of credit, and foreclosed on all of Genesis' assets. Shortly thereafter, Genesis ceased its operations.

The complaint alleges that "through an elaborate scheme of material misrepresentations and omissions, defendants induced plaintiff to invest a substantial sum of money into Genesis". More specifically it asserts that Levy and Silverstein "wilfully and intentionally [made] misrepresentations of material facts and/or omissions of material facts concerning the true financial condition and prospects of Genesis to plaintiff to induce [him] to enter into the Agreement", and pleads "upon information and belief" that defendants were aware of the $2 million loss represented by the returned merchandise at the time they were negotiating with plaintiff but failed to disclose this information to him.

## DISCUSSION

### Silverstein

■ Silverstein prepared the financial statements which revealed the condition of

Genesis up to and including August 31, 1987, and were annexed to the February Agreement. The complaint does not allege that Silverstein was either present at, or participated in, any direct conversation with plaintiff when alleged misrepresentations of facts by other defendants occurred, nor does it allege that the financial statements which he prepared were either false or misleading. Although the complaint does allege that the Agreement contained false or misleading representations relating to the financial statements, there is no allegation that Silverstein knew the financial statements would be used in this manner or that such warranties would be made.

Accordingly, we find that plaintiff has failed to state a cognizable claim for relief against Silverstein. *See Katara v. D.E. Jones Commodities, Inc.* (2d Cir.1987) 835 F.2d 966 (to state a claim of fraud, plaintiff must plead, *inter alia*, a misrepresentation, concealment or nondisclosure of a material fact, and an intent to deceive on the part of the defendant). Although we are cognizant of the fact that a cause of action should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief", *Conley v. Gibson* (1957) 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, plaintiff has not suggested any reason to believe that additional discovery would alter our present analysis. We therefore grant Silverstein's motion to dismiss.

### Republic

■ The allegations against Republic can be divided into two basic categories. First plaintiff contends that Republic affirmatively acted to deceive him when it represented that it had great confidence in Genesis and simultaneously failed to disclose the reasons which led to the subsequent discontinuance of its factoring agreement with Genesis, namely its knowledge of Genesis' poor financial condition. Second, plaintiff alleges "upon information and belief" that Republic had knowledge of

the $2 million in returned merchandise at the time plaintiff was negotiating investing in Genesis, but purposely concealed this information from plaintiff until all of the transactions had been completed.

In support of its motion to dismiss, Republic contends that its statement that it had confidence in Genesis is a mere statement of opinion which is not actionable, and that it had no duty affirmatively to disclose any information to plaintiff, including its knowledge of Genesis' financial condition. In addition, Republic contends that plaintiff has failed to allege sufficient facts from which one could infer that it had knowledge of the large amount of returned merchandise prior to May 1988.

Under New York law an expression of opinion may constitute actionable fraud where it is shown that the opinion or prediction is not honestly held at the time when made. *See Hutton v. Klabal* (S.D.N.Y.1989) 726 F.Supp. 67, 71; *cf. Minpeco, S.A. v. ContiCommodity Services, Inc.* (S.D.N.Y.1982) 552 F.Supp. 332, 335 ("even between parties who do not have a fiduciary or confidential relationship, a duty to speak does arise where defendants have engaged in 'some act or conduct which deceived plaintiffs'" (citation omitted)). Similarly, it is well settled that in pleading fraud "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally". Rule 9(b). Although we agree with Republic that the instant complaint is bareboned, viewing it as a whole we cannot say that there is no set of facts which plaintiff might be able to prove which would entitle him to relief. *See Conley, supra.* In particular, whether or not Republic had confidence in Genesis' potential at the time it asserted such confidence, and whether or not it knew of the return of $2 million worth of Genesis' merchandise prior to May 1988, are questions which can be resolved only by evidence in Republic's possession. Accordingly, we find that a dismissal prior to giving plaintiff an opportunity for discovery would be inappropriate. *See Hospital Bldg. Co. v. Rex Hospital Trustees* (1976) 425 U.S. 738, 746, 96 S.Ct.

1848, 1853, 48 L.Ed.2d 338; *cf. DiVittorio v. Equidyne Extractive Industries, Inc.* (2d Cir.1987) 822 F.2d 1242, 1248 ("Where ... much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge, the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced"). We therefore deny Republic's Rule 12(b) motion, but stay all discovery except such as may be necessary to answer these two questions. At the close of such discovery Republic may either abandon its motion or renew it. In the former event, the parties will proceed to prepare for trial. In the latter event plaintiff, if so advised, may file an amended complaint.

### Levy

Our analysis of Levy's Rule 12 motion is similar to that above set forth for Republic. Although we agree with Levy that the complaint does not allege sufficient facts to support its claim that he had knowledge of the $2 million in returned merchandise at the time of the negotiations and that it fails to allege specifically that any of the statements made to plaintiff were "knowingly false" when made, we are persuaded that the facts necessary to perfect these pleadings are exclusively in the possession of defendants. We therefore find that discovery limited to these two questions should be permitted at this time. As to Levy's claim that the complaint's failure to attribute any of the alleged false statements directly to him renders it fatally flawed for Rule 9(b) purposes, we disagree. A primary intent of the particularity requirements of this rule is to provide defendant with fair notice of plaintiff's claim so to enable preparation of its defense. Where, as here, plaintiff alleges with particularity the content of the statements sued upon, the time and place at which they were made, and the fact that the speaker was one of at most five persons— all of whom are allegedly officers and directors of Genesis (or a single representative of its factor)—we find the requirements of Rule 9(b) have been met. *See Luce v. Edelstein* (2d Cir.1986) 802 F.2d 49,

55 ("no specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question").

Defendant cites *DiVittorio, supra,* for the proposition that a further goal of the particularity requirements of Rule 9 is to protect a defendant from harm to his reputation or goodwill, and argues that the instant complaint should be dismissed on this ground [4]. However, an examination of *DiVittorio,* which sustained the complaint as against some defendants and dismissed it as against others, discloses that none of the defendants dismissed were so closely identified with the alleged fraudulent statements as is Levy in the circumstances here alleged.

■ With respect to Levy's Rule 19 motion [5], namely his contention that David Cohn is a necessary party to this action and that plaintiff's failure to name him as a defendant mandates dismissal of the complaint, we note only that the remaining claims against Levy, namely common law fraud and fraudulent concealment, are direct claims. As such Levy's liability, if any, is joint and several, and we are aware of no authority which would mandate that absent the inclusion of all possible defendants, plaintiff is not permitted to proceed

with this action. *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.* (D.C.Cir.1981) 647 F.2d 200, 207 (Ginsburg, J.) (noting that where defendants are jointly and severally liable, plaintiff may sue as many or as few of the alleged wrongdoers as it chooses, and those left out of the lawsuit are not indispensable parties.); *Kerr v. Compagnie De Ultramar* (2d Cir.1958) 250 F.2d 860, 863. [6]

Accordingly, on the basis of the facts before us, we are unable presently to conclude that absent David Cohn as a party "complete relief cannot be accorded among those already parties", or that proceeding with the instant action might adversely affect the interests of David Cohn, or leave Levy or the other parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations. *See* Rule 16(a); *cf. Felix Cinamatografica S.r.l. v. Penthouse Intern. Ltd.* (S.D.N.Y.1983) 99 F.R.D. 167, 169 (noting that it is "clear that under [Rule 19(b)] indispensability is to be determined on a pragmatic, case-by-case analysis based upon considerations of 'equity and good conscience'"). We therefore deny Levy's Rule 19 motion.

### Defendants' Motion for a Bond for Costs
### BACKGROUND

In early 1990 plaintiff commenced an action in a California state court against Re-

---

**4.** It is defendant Silverstein who makes this argument, however we accept it as if made by defendant Levy for purposes of this motion.

**5.** Levy asserts that he moves pursuant to Rule 19(b), however Rule 19(b) governs the standards to be applied in determining whether or not an action should be permitted to proceed for failure to join an indispensable party, or when joinder of an indispensable party is not feasible. Such a motion is necessarily predicate to a determination of whether or not the proposed party is an indispensable party. Accordingly, we construe this motion as a Rule 19(a) motion, namely a request for a determination that David Cohn is a necessary party. *Compare* Rule 19(b) *with* Rule 19(a).

**6.** To the extent that Levy asserts that he may need the testimony of David Cohn to present an adequate defense, *see* Levy Reply Mem. at 10, we agree with the Court of Appeals for the District of Columbia that:

[T]he question of whether or not an entity or individual should be a *party* to an action is something quite different from the questions and problems associated with obtaining evidence from such an entity or individual. Rule 19 ... does not list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication ... [thus it is error to dismiss on this ground].

*Costello Pub. Co. v. Rotelle* (D.C.Cir.1981) (Wald, J.) 670 F.2d 1035, 1044–45.

If the presence of David Cohn as a witness is deemed critical to the trial of this action, and if it is shown that he is not subject to the jurisdiction of this court, we would entertain a motion to dismiss for *forum non conveniens* conditioned on the movant's representation that he will accept service of process in any suit brought in a jurisdiction where David Cohn can be sued. Levy could then implead David Cohn should he wish so to do.

public, Levy, Steven Cohn, Genesis Marketing Corporation and others seeking the same relief it seeks in the instant suit. *See Rony Mann v. Genesis Marketing Corporation, etc., et al.* (Calif.Superior Court) Case No. 741870. By order dated May 31, 1990 that action was dismissed on grounds of *forum non conveniens*, and defendants were awarded costs. Pursuant to this order, Republic was awarded $1,005.40. Plaintiff appealed this order, but did not pursue the appeal, and Republic subsequently made motions to dismiss the appeal and for sanctions against plaintiff for having brought a frivolous appeal. Both motions were granted, and plaintiff was directed to pay Republic an additional $1,700 as sanctions. To date plaintiff has failed to make any payment to Republic.

On the basis of these facts Republic moved for a bond for costs in this action. At oral argument we informed the parties that we would permit any defendant to join in this motion. Since that time Republic has submitted a statement specifying that it requests an order requiring plaintiff to post a bond in an amount of at least $10,000 as security for costs against it; Levy has moved for an order granting it identical relief; and plaintiff has filed papers in opposition, arguing that the bond amounts sought by these defendants are punitive in nature.

## DISCUSSION

█ Having reviewed all papers submitted, we grant both Republic's and Levy's motions as specified herein. Plaintiff's failure to pay Republic any portion of the $2,705.40 which the California courts ordered it to do, coupled with its failure to provide any explanation for its refusal to meet this financial obligation, causes us to have serious doubts as to whether or not plaintiff will be willing to pay the instant defendants' costs should they prevail. Recognizing that the amount of the bond should not "seriously impede" plaintiff's ability to prosecute the action, in the exercise of our discretion, we direct plaintiff to post a single $10,000 security bond running

both to Republic and Levy. *See Atlantic Shipping Corp., Inc. v. Chemical Bank* (2d Cir.1987) 818 F.2d 240, 251–252 (finding that requirement that plaintiff, a debtor in bankruptcy, post a $10,000 bond for costs in order to proceed with its fraud claim was not an abuse of discretion).

## CONCLUSION

The complaint as against Silverstein is dismissed with prejudice. Levy and Republic's Rule 12 motions are denied, and plaintiff is permitted limited discovery as set-forth herein. Defendants may renew said motions at the close of this discovery and plaintiff may file an amended complaint in the interim, if so advised. Levy's Rule 19 motion is denied.

On the motion of defendants Levy and Republic, and pursuant to Local Rule 39, we order plaintiff to file an original secured bond for costs in the amount of $10,000 prior to further proceeding with this action against either defendant.